By the Court.
 

 This is an original action in this court, -wherein the relator, Harry S. Day, as treasurer of state, seeks a writ of mandamus commanding the respondents, who are members of the state civil service commission, to approve the pay roll of the relator, and especially the items thereon designating the salary of Jesse Slack, as supervisor of cigarette tax stamps, and Fanny Abbott, as assistant cashier, both employees in the office of the treasurer of state.
 

 Issue was made by answer, and the case was submitted to the court on an agreed statement of facts. This agreed statement of facts itself is quite voluminous, and it is deemed unnecessary to set it forth herein.
 

 It is disclosed that Jesse Slack occupies the position of supervisor of cigarette tax stamps in the office of the treasurer of state, and that Fanny Abbott occupies the position of assistant cashier in the office of the treasurer of state, and the question submitted is whether these positions, or either of them, fall within what is known and designated by law as the “classified service.”
 

 The constitutional provision, Section 10, Article XY, dealing with the subject of civil service, specifies that “appointments and promotions in the civil service of the state, the several counties, and cities, shall be made according to merit and fitness, to be ascertained, as far as practicable, by competitive examinations.” The statute dealing with the subject, Section 486-8 (b), General Code, uses substantially the same language where it refers to positions and employments being in a competitive class “for which it is practicable to determine the merit and fitness of applicants by competitive examinations.”
 

 Slack has been appointed by the treasurer of state,
 
 *21
 
 under the title and designation of supervisor of cigarette tax stamps, and has been placed in charge of all matters relative thereto, and made responsible to the state treasurer therefor. He determines the validity and accuracy of all. requisitions for such stamps; keeps the individual accounts with the various county treasurers and the wholesale and retail dealers that purchase stamps; prepares daily statements for the state auditor, the tax commission, and the state treasurer; and performs all other duties necessary in carrying on the sale and distribution of cigarette tax stamps, including the right to determine on behalf of the relator whether the surety or sureties on bonds filed with the tax commission for the purpose of purchasing stamps on credit are satisfactory.
 

 It is disclosed further that the relator refused and still refuses to appoint any one of the three persons certified to him by the respondents as eligible to appointment to the office of supervisor of cigarette tax stamps as a result of competitive examination, but continues to employ said Jesse Slack in such position, and continues him in charge of all activities relative to the handling of cigarette tax stamps, in which capacity he has handled stamps and money in the approximate amount of $8,800,000. It is further disclosed that, upon the enactment of the Cigarette Tax Stamp Law (Section 5894-1
 
 et seq.,
 
 General Code), and the appointment of Jesse Slack to the position referred to, relator procured an additional bond of $50,000, which was required because of the additional sums of money handled in said office, and which are handled by said Jesse Slack on behalf of the relator.
 

 With reference to Fanny Abbott, the facts disclose that she occupies a position known as assistant cashier by appointment of the state treasurer, but not from a list of eligibles certified by the civil service commission, and that, as the title implies, her duties are those of assisting the cashier in the office of the state treas
 
 *22
 
 urer and looking after all the details of the duties of that position; a portion of her duties being to verify the revenue vouchers received, to verify the balance and prepare the moneys, drafts, and checks for deposit in the active depositories of the state treasurer, to reconcile all active bank accounts, to keep records of outstanding cashier’s drafts, to keep a record of the office securities, and marked value thereof, and, in the absence of the cashier, to sign drafts drawn on active depositories, and other duties of a like character, in the performance of which she has access to the treasury vaults containing moneys and negotiable securities approximating many millions of dollars, and in addition has access to the individual safe of the cashier containing large amounts of money.
 

 Is it practicable to determine the merit and fitness of applicants for such positions by competitive examinations? We may be assisted in answering this question by asking ourselves the further question whether an official having such tremendous responsibilities as the treasurer of state should be required to delegate the duties above recited to some person not of his own selection, but assigned to him as the result of a competitive examination? The occupant of each of the positions involved in this action performs duties which demand and require strict integrity and high moral character and necessarily sustains an intimate fiduciary relation to the state treasurer. Express knowledge or technical equipment may be ascertained or determined by competitive examination, but, as stated by this court in
 
 State, ex rel. Bryson,
 
 v.
 
 Smith, Secy. of State,
 
 101 Ohio St., 203, 128 N. E., 261, “the confidential and fiduciary relation is paramount.” A further statement in that opinion is pertinent: “This paramount condition, as pointed out, cannot be determined by examination, but must be determined by the personal knowledge or the personal confidence of the appointing officer in the vigilance and faithfulness of
 
 *23
 
 the deputy or the one occupying the fiduciary relation. This is obviously the thing the Legislature had in mind.”
 

 Obviously, too, an officer with such responsibility as the state treasurer should have the prerogative of satisfying himself of the integrity and the reliability of an appointee who necessarily is in such a close fiduciary relation as that sustained by those occupying the positions here in question.
 

 Being of the opinion that these positions come within the class as to which it is impracticable to ascertain the merit and fitness of applicants by competitive examination, the writ of mandamus prayed for by the relator is awarded.
 

 Writ allowed.
 

 Marshall, C. J., Jones, Matthias, Day, Allen and Stephenson, JJ., concur.
 

 Kinkade, J., not participating.